# STATE OF MICHIGAN

# COURT OF APPEALS

SANDRA MCCARTHY,

Plaintiff-Appellant,

UNPUBLISHED
August 11, 2016

v

No.  326715
St. Clair Circuit Court
LC No.  2014-000131-NI

DEBORAH LIPPS-CARBONE,

Defendant-Appellee.

Before:  RIORDAN, P.J., and SAAD and M. J. KELLY, JJ.

PER CURIAM.

In this negligence action for the recovery of damages resulting from an automobile accident, plaintiff appeals the trial court's order that granted summary disposition in favor of defendant.  The trial court granted defendant's motion for summary disposition because it determined that there was no question of fact that plaintiff's injuries were not caused by defendant's negligence.  For the reasons provided below, we affirm.

This case arises from a 2013 automobile accident when defendant rear-ended plaintiff while plaintiff sat in a line of traffic at a stop sign.  Plaintiff filed a complaint against defendant in which she alleged that the accident exacerbated and aggravated her preexisting physical and psychological injuries sustained in a prior 2003 automobile accident.  Defendant moved for summary disposition on the basis that plaintiff had not established that defendant's negligence caused her injuries and, had she established causation, plaintiff did not show that she suffered a serious impairment of body function under MCL 500.3135 of Michigan's no-fault act.  After a hearing on defendant's motion for summary disposition, the trial court ruled that plaintiff failed to present any evidence that she sustained any physical injuries as a result of the 2013 accident and granted defendant's motion.

Plaintiff contends that the trial court erred when it granted defendant's motion for summary disposition because a genuine issue of material fact existed with respect to proximate cause.  We disagree.

We review a trial court's grant or denial of a summary disposition motion de novo. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008).  Although defendant sought summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10), the trial court did not expressly identify the legal grounds on which it found summary disposition appropriate. However, because it is clear that the trial court considered evidence beyond the pleadings, we

-1-

review the decision under the standard of MCR 2.116(C)(10). See *Besic v Citizens Ins Co of Midwest*, 290 Mich App 19, 23; 800 NW2d 93 (2010).

A motion under MCR 2.116(C)(10) tests the factual support for a claim, *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004), and should only be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). In reviewing a motion under this subrule, "this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621.

"To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). At issue in this case is the causation element. Causation includes two separate elements: "(1) cause in fact and (2) legal or proximate cause." *Lockridge v Oakwood Hosp*, 285 Mich App 678, 684; 777 NW2d 511 (2009). "The cause in fact element generally requires showing that 'but for' the defendant's actions, the plaintiff's injuries would not have occurred." *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994). And "legal cause or 'proximate cause' normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Id*.

Plaintiff bears the burden of setting forth specific facts that defendant caused plaintiff's injuries—mere speculation is insufficient to support a finding of causation. *Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004); *Skinner*, 445 Mich at 173. Here, plaintiff failed to present specific factual evidence that establishes "but for" defendant's actions, plaintiff would not have been injured. It is undisputed that plaintiff suffered from preexisting physical and psychological conditions stemming from a 2003 automobile accident. Specifically, these conditions included neck, back, and psychiatric problems. A review of plaintiff's medical records—prior to the June 2, 2013, accident with defendant—reveals that following her 2003 accident, on November 25, 2003, plaintiff was diagnosed with degenerative disc disease at "L4-5 and L5-S1 levels," and on September 17, 2009, plaintiff was diagnosed with a "mild disc disease at C5/6 and C6/7." On March 21, 2012, plaintiff's treating spine surgeon, Dr. Andres Munk, noted that plaintiff had a C5-6 small disc protrusion in her neck and chronic discogenic changes at L4-5 and L5-S1. Further Dr. Munk noted that steroid treatment "did not help much," and he prescribed a back brace for plaintiff.

On April 25, 2012, Dr. Munk noted that plaintiff's updated x-rays showed a collapse between C5-6 and C6-7, but otherwise she was "pretty much asymptomatic." Dr. Munk also noted that plaintiff's MRI of her lumbar spine showed "discogenic changes between L4-5 and L5-S1." A couple months before the accident with defendant, on April 3, 2013, Dr. Munk noted that plaintiff was experiencing acute flare-up of her symptoms. Plaintiff complained that she was experiencing pain in her back because she had to do a lot of bending and twisting at work. Dr. Munk's impression was "L4-L5 and L5-S1 changes, Grade I spondylolisthesis, L5-S1, and Sacroiliitis."

Three days after the accident, on June 5, 2013, plaintiff visited Dr. Munk once again. This time, Dr. Munk took x-rays of plaintiff's neck, prescribed a steroid pack, and ordered an MRI. Dr. Munk noted that there were "no acute changes" in plaintiff's neck and that, although there was narrowing between C5-6 and C6-7, there were no obvious changes when compared to her previous x-rays. Dr. Munk's impression was "[c]ervical strain with some exacerbation of discogenic of both the cervical and lumbar spine." On June 14, 2013, plaintiff saw Dr. Munk to go over the results of her June 7 MRI. Again, Dr. Munk noted that when he compared her results to her prior MRI, he did not see any significant changes.

In reviewing plaintiff's medical history before and after accident, it appears that plaintiff suffered from the same symptoms as she did before the accident. It is true that "[r]egardless of the preexisting condition, recovery is allowed *if the trauma caused by the accident triggered symptoms from that condition*." *Wilkinson v Lee*, 463 Mich 388, 395; 617 NW2d 305 (2000) (emphasis added). However, plaintiff suffered from disc changes in her cervical and lumbar spine before the accident occurred, and the severity of plaintiff's pain symptoms changed visit to visit. There is no evidence that the pain plaintiff experienced after the accident was actually caused by defendant's actions. And there is no evidence that any of plaintiff's treating physicians concluded that her problems were caused by the June 2, 2013, accident. Indeed, plaintiff failed to introduce any affidavits from her treating physicians that stated that, in their professional opinion, the accident exacerbated or aggravated her existing symptoms. Instead, Dr. Stanley Lee, an independent medical examiner, concluded that any treatment plaintiff received above and beyond a soft tissue strain could not be related to or caused by defendant's actions in the June 2 accident. Importantly, plaintiff failed to introduce any supporting evidence indicating that her treating physicians disagreed with Dr. Lee's conclusion. Thus, we hold that plaintiff failed to present sufficient evidence that defendant's actions were a cause in fact of her injuries. Additionally, because plaintiff did not establish that defendant was the cause in fact of her injuries, she also cannot demonstrate how defendant's actions were the proximate or legal cause of those injuries. *See Craig*, 471 Mich at 87 ("[This Court] must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that defendant's negligence was the proximate or legal cause of those injuries.").

We note that plaintiff's reliance on *Wilkinson* is misplaced. The issue in *Wilkinson* was whether the evidence sufficiently established that the accident was the proximate cause of the plaintiff's injuries. *Wilkinson*, 463 Mich at 389. The plaintiff in *Wilkinson* was involved in a rear-end collision that caused him to be thrown forward and then backward with enough force to break the seat. *Id*. The plaintiff was initially diagnosed with a neck strain after the accident and missed two days of work. *Id*. at 389-390. The plaintiff's symptoms worsened following the accident and included nausea, severe headaches, dizziness, double vision, and accelerating memory loss. *Id*. at 390. Later, the plaintiff was diagnosed with a brain tumor. *Id*. The *Wilkinson* Court found that the medical evidence clearly permitted the jury to find causation because two witnesses, a surgeon who removed the tumor and the defense medical expert, testified that the trauma to the plaintiff's head from the accident could have precipitated or accelerated the plaintiff's symptoms. *Id*. at 395-396. *Wilkinson* is distinguishable from this case. Unlike the plaintiff in *Wilkinson*, plaintiff herein was never diagnosed with a new injury, and plaintiff never presented *any* medical evidence establishing that her physicians opined that the June 2, 2013, accident caused or aggravated her preexisting injuries.

-3-

In sum, plaintiff failed to establish a genuine issue of material fact as to whether defendant's conduct caused her injuries. As a result, the trial court properly granted defendant's motion for summary disposition.[1]

Affirmed. Defendant, as the prevailing party, may tax costs pursuant to MCR 7.219.


/s/ Michael J. Riordan
/s/ Henry William Saad

---

[1] Defendant also alternatively argues that we should affirm the grant of summary disposition based on her contention that plaintiff's suit nonetheless is barred because plaintiff failed to present evidence that she met the requirement under the no-fault act that she suffered a "serious impairment of body function." See MCL 500.3135(1) ("A person remains subject to tort liability for noneconomic loss . . . *only* if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.") (emphasis added). Of course, if defendant's conduct was not the cause in fact of plaintiff's injuries, *a fortiori*, the accident did not cause plaintiff to suffer a "serious impairment of body function."