WILKINSON v LEE

Docket No. 115695. Decided September 26, 2000. On application by the
plaintiffs for leave to appeal, the Supreme Court, in lieu of granting
leave, reversed the judgment of the Court of Appeals and remanded
the case to that Court for further proceedings.

Carl A. Wilkinson brought an action in the Oakland Circuit Court
against Anthony Lee, the driver of a vehicle that struck Carl Wilkin-
son's vehicle, and General Motors Corporation, the owner of the
vehicle, seeking damages for injuries suffered by Carl Wilkinson as
a result of the accident. The court, Fred M. Mester, J., entered judg-
ment on a jury verdict for the plaintiff. The Court of Appeals,
SAWYER and WHITBECK, JJ. (MARKEY, P.J., dissenting), reversed in an
unpublished opinion per curiam, concluding that the defendants
were entitled to a directed verdict or judgment notwithstanding the
verdict on the issue of causation (Docket No. 203218). The plaintiff
seeks leave to appeal.

In an opinion per curiam, signed by Chief Justice WEAVER, and
Justices KELLY, TAYLOR, CORRIGAN, YOUNG, and MARKMAN, the Supreme
Court held:

The evidence was sufficient to permit the jury to find the acci-
dent to have been a proximate cause of the plaintiff's injury.

1. A tortfeasor takes a victim as found and will be held responsi-
ble for the full extent of the injury, even though a latent suscepti-
bility of the victim renders the injury far more serious than reason-
ably could have been anticipated. The majority erred in focusing on
the underlying brain tumor as the basic injury. Regardless of the
preexisting condition, recovery is allowed if the trauma caused by
the accident triggered symptoms of that condition. The jury could
have found from the evidence that the accident caused by the
driver's negligence was the cause in fact of the plaintiff's injury.

2. A negligent actor is subject to liability for harm to another,
although a physical condition of the other, which is neither known
nor should be known to the actor, makes the injury greater than
what reasonably should have been foreseen as a probable result of
the negligent conduct. In this case, the plaintiff's preexisting brain
tumor made him more vulnerable to adverse consequences from
head trauma than the average person, and it was certainly foresee-
able that a result of the driver's negligence in causing an auto acci-
dent could be physical injury to an occupant of the other vehicle.

The fact that this plaintiff was unusually vulnerable to head injuries
does not relieve the defendants of responsibility for those damages.
Justice CAVANAGH concurred in the result only.
Reversed and remanded.

*Metry, Metry & Sanom* (by *Frederick E. Metry* and *Theodore A. Metry*), and *Jerald R. Lovell,* of counsel, for the plaintiffs-appellants.

*Dold, Spath & McKelvie, P.C.* (by *Charles L. Mc-Kelvie*), for the defendants-appellees.

PER CURIAM. This action arises out of an automobile accident for which the defendants[1] admitted responsibility. The issue is whether the evidence sufficiently established that the accident was a proximate cause of plaintiff Carl Wilkinson's[2] injuries. The jury returned a verdict for the plaintiff, but the Court of Appeals reversed, concluding that the defendants were entitled to a directed verdict or judgment notwithstanding the verdict on the causation issue.

We conclude that the evidence was sufficient to permit the jury to find the accident to have been a proximate cause of the plaintiff's injury, and reverse.

I

On May 20, 1992, plaintiff's vehicle was struck from the rear by defendants'. The accident threw him forward and then backward with sufficient force to break the seat of the vehicle. Plaintiff was initially diagnosed with neck strain and missed only two days

---

[1] Individual defendant Anthony Lee was an employee of defendant General Motors Corporation, and was driving one of its vehicles at the time of the accident.

[2] Jeanette Wilkinson's claims are derivative, and we will refer to Carl Wilkinson as the plaintiff.

of work. Shortly thereafter, however, according to the plaintiff's testimony, he began experiencing headaches and neck pain. Other symptoms developed, with plaintiff becoming slow moving, quiet, and fatigued. There was also testimony that his physical and mental condition declined significantly after the accident. Although plaintiff sought treatment for these ailments, the symptoms intensified over the next year and a half, causing nausea, severe headaches, dizziness, and double vision, as well as accelerating memory loss. Finally, in January 1994, plaintiff lost consciousness several times. He was taken to a hospital, and was diagnosed as having a meningioma brain tumor. The tumor was removed in February 1994. While most of the previous symptoms ceased after the operation, some persisted.

The surgeon who removed the tumor testified that the tumor was a slow growing one, and that it was quite likely that the plaintiff had the tumor at the time of the accident. Similarly, the defense medical expert testified that the accident could not cause the tumor, and there was nothing to suggest that the trauma of the accident could cause it to grow or accelerate. However, both witnesses testified that the trauma to plaintiff's head from the accident could have precipitated or accelerated the symptoms of the tumor that the plaintiff experienced.

The circuit court denied the defendants' motion for a directed verdict, and the jury returned a verdict in favor of the plaintiffs totaling $175,000.[3] Defendants moved for judgment notwithstanding the verdict, or

---

[3] It allocated $150,000 to Carl Wilkinson and $25,000 to Jeanette Wilkinson.

in the alternative a new trial, but the motion was denied.

II

The defendants appealed, and the Court of Appeals reversed in a two-to-one decision.[4] The majority began by correctly stating the standard of review of motions for directed verdict and judgment notwithstanding the verdict. The appellate court is to review the evidence and all legitimate inferences in the light most favorable to the nonmoving party. Only if the evidence so viewed fails to establish a claim as a matter of law, should the motion be granted. *Orzel v Scott Drug Co*, 449 Mich 550, 557-558; 537 NW2d 208 (1995).

Next, the majority turned to the question of proximate cause, noting that the plaintiff must prove that the driver's conduct was both a cause in fact and a legal cause of his injuries. *Weymers v Khera*, 454 Mich 639, 647; 563 NW2d 647 (1997). The majority found the plaintiff's proofs lacking on both tests.

Regarding cause in fact, the majority focused on the medical testimony that the trauma of the accident did not cause the tumor or result in its growth, but at most precipitated plaintiff's symptoms. The Court said:

> The evidence in this case, at best, established that the 1992 accident may have *precipitated* Wilkinson's *symptoms*. Clearly and unequivocally, the 1992 accident did not, in fact, cause Wilkinson's underlying brain tumor, the basic "injury" here. Applying the "but for" analysis of factual cau-

---

[4] Unpublished opinion per curiam, issued June 15, 1999 (Docket No. 203218).

sation, while it can be said that the 1992 accident may have
"precipitated," or "triggered" Wilkinson's *symptoms*, it can-
not be said that but for the 1992 accident Wilkinson would
not have had the brain tumor. It is therefore critical that
plaintiffs presented no evidence to prove either that the
tumor would not have been removed but for the 1992 acci-
dent or that the 1992 accident caused the tumor to be
removed sooner than it otherwise would have been. Indeed,
as defendants point out, both neurosurgeons testified that
Wilkinson's tumor was slow-growing and was large in size
at the time it was removed by surgery. Further, it was
undisputed that the tumor was removed as soon as it
became seriously symptomatic. See *Goggin v Peoples
Transport Corp*, 327 Mich 404, 408-409; 41 NW2d 908 (1950)
(a plaintiff could not recover damages for injury because
the medical testimony established no aggravation of tumor
or connection between it and accident). [Emphasis in
original.]

On the legal cause question, the majority said there
were two points to be considered: "whether it was
foreseeable that defendants' conduct might create a
risk of harm to Wilkinson and whether the results of
that conduct were foreseeable." The Court said there
was no doubt that the driver's conduct created a risk
of harm, meeting the first prong of the test. However,
even accepting for the purposes of analysis that the
defendant's conduct precipitated symptoms, the plain-
tiff presented no evidence of foreseeability. The
majority said:

Simply put, there is no way that defendants could have
reasonably foreseen, even when construing all the evidence
in a light most favorable to plaintiffs, that the 1992 accident
would precipitate or trigger Wilkinson's symptoms, the
basic cause of which was a then as yet undiagnosed brain
tumor. Thus, in this case, there was no showing that the
nexus that may have existed between the 1992 accident and
Wilkinson's symptoms was of such a nature that it is

socially and economically desirable to hold defendants liable.[5]

III

Judge MARKEY dissented, finding the evidence sufficient on both the cause in fact and legal cause aspects of the proximate cause issue. Initially, she said that the majority was wrong in characterizing the underlying brain tumor as the "injury at issue." According to Judge MARKEY, the injury in question was the head trauma that caused plaintiff's brain to swell and apparently trigger the neurological problems that he began to suffer soon after the accident. Judge MARKEY noted that even defendants' expert conceded that he could not say with any degree of medical certainty that the plaintiff's tumor would ever have become symptomatic in the absence of the accident. In Judge MARKEY's view:

> [P]laintiff is a classic example of the victim with the "egg-shell" skull and the axiom that one must take a plaintiff as one finds him. Shall we decline to impose negligence on one who knocks down and breaks the bones of a little old lady who suffers from osteoporosis simply because the inattentive or careless oaf didn't cause her underlying condition? Of course not.

Judge MARKEY reasoned that when the majority said that the evidence would permit a finding that the 1992 accident may have "precipitated" or "triggered" the plaintiff's symptoms, it in effect found sufficient

---

[5] Because of its resolution of the proximate cause issue, the majority did not reach the other issue raised by the defendants—whether the plaintiff's injuries constituted a serious impairment of body function under MCL 500.3135; MSA 24.13135 as in effect at the time of the accident.

cause in fact and proximate cause to overcome a motion for directed verdict. She further concluded that in ruling that the motion should have been granted, the majority impermissibly substituted its judgment for that of the jury. In Judge MARKEY's view the evidence was clearly adequate to support the jury's conclusion. As she summarized the testimony:

> Here, Wilkinson and his family testified that he did not experience the afore-described symptoms before the 1992 accident at issue, and that the symptoms started immediately after the accident. Each of these witnesses testified that Wilkinson's symptoms increased in severity over time, commencing after the accident occurred. Moreover, Dr. Guthikonda testified that the trauma of the accident could have precipitated and/or complicated the symptoms Wilkinson experienced. Specifically, Dr. Guthikonda testified that although the accident did not cause the tumor to grow, the trauma of the accident "precipitated" Wilkinson's symptoms because the force of the accident pushed the tumor against plaintiff's brain, causing small microchanges, hemorrhages or friction against the brain. Dr. Guthikonda testified that this conclusion becomes more likely because the symptoms started immediately after the accident. In addition, Dr. Boodin admitted that *he* was speculating when he opined that Wilkinson's symptoms would have begun and intensified even had the accident not occurred. [Emphasis in original.]

IV

The Court of Appeals majority set forth the principle that a peculiar susceptibility of the victim does not relieve the tortfeasor of full responsibility for the damages, stating:

> A tortfeasor takes a victim as the tortfeasor finds the victim and will be held responsible for the full extent of the

injury, even though a latent susceptibility of the victim renders the injury far more serious than reasonably could have been anticipated.

However, we agree with Judge MARKEY that the majority failed to apply that clearly applicable principle in this case. The majority erred in focusing on the underlying brain tumor as the "basic injury" involved in the case. Regardless of the preexisting condition, recovery is allowed if the trauma caused by the accident triggered symptoms from that condition. The medical testimony at trial would clearly have permitted the jury to conclude that the trauma caused by the accident precipitated the symptoms. Plaintiff's treating physician, Dr. Guthikonda, said:

*Q.* For the purposes of clarification, then, Doctor, is it still your opinion that the—there was insufficient facts to render an opinion as to whether or not the accident accelerated or activated the tumor?

*A.* I think the words are—when you say activation, you're talking about either making a tumor appear or making the symptoms from the tumor appear.

*I think in this case it is not the activation of the tumor, but precipitation of symptoms. I think that's the difference. And my statement was that the symptoms referable to the tumor were precipitated by the accident.* That has nothing to do with the tumor growth or tumor activation.

So it's like saying if you have a weak wall and somebody pushes on the wall and the wall collapses, so there was a weakness in the wall as an underlying problem. In this case, it's the tumor that has been there and when the accident happens, from the description of the attorney, that there was an acceleration/deceleration type of an injury. The brain has to move inside the head and when there is a six centimeter tumor, then there is some small microchanges or small hemorrhages that could develop and *the friction of the tumor against the brain is what precipitates the symp-*

*toms, even though the tumor wasn't activated in size nor its growth.*

*Q. So you don't know whether it grew?*

*A. I know it didn't grow. But the symptoms were precipitated by the accident because it was pushing on the brain.* [Emphasis added.]

The defendants' expert, Dr. Boodin, was asked if he felt the trauma might have caused, aggravated, or precipitated the symptoms and said:

*A. My opinion is that they probably contributed to those symptoms and perhaps caused them.*

Thus, the jury could have found from the evidence that the accident caused by the driver's negligence was the cause in fact of the plaintiff's injury.

V

The legal cause portion of the majority's analysis is also flawed. Established principles require that the defendants take the plaintiff as he was, with his susceptibility to injury resulting from his brain tumor. 2 Restatement Torts, 2d, § 461, p 502, contains a classic statement of that principle:

The negligent actor is subject to liability for harm to another although a physical condition of the other which is neither known nor should be known to the actor makes the injury greater than that which the actor as a reasonable man should have foreseen as a probable result of his conduct.

As the comment to § 461 states:

The rule stated in this Section applies not only where the peculiar physical condition which makes the other's injuries

greater than the actor expected is not known to him, but also where the actor could not have discovered it by the exercise of reasonable care, or, indeed even where it is unknown to the person suffering it or to anyone else until after the harm is sustained. A negligent actor must bear the risk that his liability will be increased by reason of the actual physical condition of the other toward whom his act is negligent. [*Id.*]

See *Rypstra v Western Union Telegraph Co*, 374 Mich 166, 167-168; 132 NW2d 140 (1965); *Richman v City of Berkley*, 84 Mich App 258, 262; 269 NW2d 555 (1978); *McNabb v Green Real Estate Co*, 62 Mich App 500, 515-519; 233 NW2d 811 (1975); *Schwingschlegl v City of Monroe*, 113 Mich 683, 685-686; 72 NW 7 (1897); *Rawlings v Clyde Plank & Macadamized Rd Co*, 158 Mich 143, 146; 122 NW 504 (1909).

This case is a clear one for the application of that principle. The plaintiff's preexisting brain tumor made him more vulnerable to adverse consequences from head trauma than the average person. However, it was certainly foreseeable that a result of the driver's negligence in causing an auto accident could be physical injury, including head trauma, to an occupant of the other vehicle. The fact that this particular plaintiff was unusually vulnerable to head injuries does not relieve the defendants of responsibility for those damages.[6]

---

[6] Although its analysis does not directly proceed in those terms, the Court of Appeals uses language suggesting that in order for the driver's action to be a legal cause, the nexus between the wrongful acts and injuries sustained must be "of such a nature that it is socially and economically desirable to hold [the wrongdoer] liable." That phrasing appears in a series of Court of Appeals cases beginning with *Adas v Ames Color-File*, 160 Mich App 297, 301; 407 NW2d 640 (1987), which quoted the language from 1 American Law of Products Liability (3d ed), § 4.2. See also *Helmus v Dep't of Transportation*, 238 Mich App 250, 256; 604 NW2d 793 (1999);

VI

For the foregoing reasons, we conclude that the issue of proximate cause was properly submitted to the jury. The evidence supported its verdict, and thus the Court of Appeals majority improperly ruled that judgment should be entered for the defendants. We reverse the judgment of the Court of Appeals and remand the case to the Court of Appeals for consideration of the issue that it did not reach in its earlier decision. `

WEAVER, C.J., and KELLY, TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred.

CAVANAGH, J., concurred in the result only.

---

*Zine v Chrysler Corp*, 236 Mich App 261, 286; 600 NW2d 384 (1999); *Ridley v Detroit*, 231 Mich App 381, 389; 590 NW2d 69 (1998); *Ross v Glaser*, 220 Mich App 183, 193; 559 NW2d 331 (1996).

Certainly considerations of public policy do enter into limitations on proximate cause. See *Davis v Thorton*, 384 Mich 138, 146; 180 NW2d 11 (1970). However, there is no reason to resort to such a wide-ranging policy inquiry in this case. The facts presented fall squarely within long-established principles, and the evidence would permit a jury to find that the plaintiff's injuries were the foreseeable result of the driver's negligent conduct.