Kelly, J.
(dissenting). In resolving this appeal for defendant, the majority interprets the facts in the light most favorable to defendant. It ignores the fact that the jury is entitled to infer causation from the proofs presented. Viewed properly, in the light most favorable to plaintiff, the facts support the jury’s verdict. Therefore, I respectfully dissent.
I
This Court reviews motions for a directed verdict or judgment notwithstanding the verdict by drawing all legitimate factual inferences in the light most favorable to the nonmoving party. Wilkinson v Lee, 463 Mich 388, 391; 617 NW2d 305 (2000). This rule reflects the longstanding understanding of our appellate courts that a jury’s verdict should not be lightly disturbed. However, the majority does just that, viewing the evidence that reached the jury through a distorted lens.
A plaintiff must convince a jury that he has satisfied each element of his cause. He may do that either with direct evidence or with evidence that permits the jury to infer the required conclusion. Here, the majority properly catalogues the discriminatory actions undertaken by Mr. Curdy, ante at 135, but ignores the juiy’s ability to infer that the same discriminatory animus caused plaintiff’s job loss later. Rather, the majority simply concludes that the existence of defendant’s long-term disability (ltd) policy *143 made it unreasonable to conclude that plaintiff established causation and, therefore, plaintiff loses.
However, plaintiff presented abundant proof to create an inference regarding causation consistent with the jury’s finding. The jury was entitled to believe that the facts precipitating the loss of her account representative position were an extension of the discriminatory animus to which defendant subjected plaintiff. Specifically, defendant’s words and actions made it unclear whether it required plaintiff to report for work at defendant before the onset of ltd benefits.
Several important facts support the jury’s conclusion. First, defendant’s management employees repeatedly assured plaintiff that her position would be available when she returned from medical leave. However, no one informed her that, to preserve her job, she would need to report to defendant before she began collecting ltd benefits. Instead of transferring her to defendant’s medical leave roster on the date of the merger, one of defendant’s executives, Joel Gibson, decided to keep plaintiff on the Blue Care Network (bcn) roll.
In September 1993, plaintiff asked Pat Stone, the human resources manager at BCN, how the leave of absence would “fall within the merger . . . .” Plaintiff testified that Stone talked to Gibson and then explained to plaintiff that because defendant “did not want to absorb the medical disability at that time . . . they wanted [her] to take the disability benefits through Blue Care Network and then once [she] was—six weeks after [she] had her child and returned to work [she] would be transferred to Blue Cross and Blue Shield . . . .” Plaintiff testified that had defendant transferred plaintiff to defendant’s disability roster, she would have been entitled to resume the *144 account representative position upon returning from ltd leave.
Additionally, despite having received repeated phone calls from plaintiff to check on the status of her bcbsm job, Curdy, Whitford, and Roseberry neglected to return plaintiffs calls. Plaintiff managed to reach Roseberry by telephone on one occasion, but he told her not to worry and that he would keep her informed of the merger. He never did. Consequently, plaintiff’s termination proceeded administratively and without notice to her. These intentional omissions supported plaintiffs position that the discriminatory animus earlier exhibited led to her dismissal.
Moreover, defendant’s posttermination actions support the inference of a causal link between the discrimination alleged and defendant’s employment actions. Specifically, defendant refused to rehire plaintiff to the account representative position upon her return, despite its custom of allowing an employee to resume his old position, if it remained available. When the account representative position became available after plaintiff’s return, defendant refused to waive its new college degree requirement and consider plaintiff for the position. These post-termination facts support a jury inference that defendant’s discriminatory animus caused it to exclude plaintiff from the account representative position after her disability leave.
II
The factual scenario presented in this case is scarcely so one-sided that a court could rule, as does the majority, that defendant prevails as a matter of law. Considering that plaintiff presented sufficient *145 proof for the jury to infer a causal link between her pregnancy and defendant’s failure to hire her, the jury’s verdict should not be disturbed. The jury was entitled to disbelieve that the LTD policy was the cause of her losing the job. This Court should not supersede the jury’s factual findings with its own evaluation of the facts; rather, it should affirm the Court of Appeals decision and allow the verdict to stand.