*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOMANA FAKHOURI,

        Plaintiff-Appellant,

v

GIOVANNI POMA and BUCK'S OIL COMPANY, INC.,

        Defendants-Appellees.

UNPUBLISHED
November 30, 2023

No. 362389
Wayne Circuit Court
LC No. 20-002247-NI

Before: O'BRIEN, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

In this third-party no-fault case, plaintiff, Jomana Fakhouri, appeals as of right an order denying her motion for judgment notwithstanding the verdict (JNOV) or a new trial following judgment entered on a jury verdict of no cause of action. We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

In March 2019, Fakhouri was a passenger in a vehicle stopped at a red light. Defendant, Giovanni Poma, who was driving a vehicle for his employer, defendant Buck's Oil Company, failed to stop for the red light. He rear-ended the vehicle stopped behind Fakhouri's vehicle, and the impact caused that vehicle to crash into Fakhouri's vehicle. Fakhouri's vehicle, propelled by the collision, crashed into the vehicle in front of it. Fakhouri lost consciousness. She was transported by ambulance to the hospital. She testified that she felt severe pain in her neck, back, knees, hips, and left shoulder. Photographs admitted at trial also depicted glass fragments in her skin and showed her wearing a cervical collar.

Following a jury trial, the jury found that Fakhouri was injured as a result of the motor vehicle crash, but that she did not sustain a serious impairment of an important bodily function or any permanent serious disfigurement. Fakhouri moved for JNOV, or, in the alternative, a new trial. She argued that in order to show a serious impairment of an important bodily function, she had to establish "(1) an objectively manifested impairment (2) of an important body function that (3) [affected her] general ability to lead [her] normal life." See *McCormick v Carrier*, 487 Mich

180, 195; 795 NW2d 517 (2010). She asserted that the no-cause verdict was against the great weight of the evidence because the evidence clearly established each requirement. The trial court denied her motion. This appeal follows.

## II. SERIOUS IMPAIRMENT OF IMPORTANT BODY FUNCTION

### A. STANDARD OF REVIEW

Fakhouri argued that the trial court erred by denying her motion for JNOV. We review de novo a trial court's decision on a motion for JNOV. *Taylor v Kent Radiology*, 286 Mich App 490, 499; 780 NW2d 900 (2009). In doing so, this Court reviews "the evidence and all legitimate inferences in the light most favorable to the nonmoving party." *Wilkinson v Lee*, 463 Mich 388, 391; 617 NW2d 305 (2000). "If reasonable jurors could have honestly reached different conclusions, the jury verdict must stand." *Morinelli v Provident Life & Accident Ins Co*, 242 Mich App 255, 260–261; 617 NW2d 777 (2000).

She also asserts that the trial court erred by denying her motion for a new trial. A court's decision to deny a motion for new trial is reviewed for an abuse of discretion. *Guerrero v Smith*, 280 Mich App 647, 666; 761 NW2d 723 (2008). A court abuses its discretion when its decision falls "outside the range of reasonable and principled outcomes." *Barrow v Wayne Co Bd of Canvassers*, 341 Mich App 473, 484; 991 NW2d 610 (2022). "The jury's verdict should not be set aside if there is competent evidence to support it." *Barnes v 21st Century Premier Ins Co*, 334 Mich App 531, 551-552; 965 NW2d 121 (2020). Witness credibility and "how much weight should be given to testimony" are matters left for the jury. *Id*. at 551-552.

### B. ANALYSIS

Tort liability for noneconomic losses arising out of the ownership, maintenance, or use of a motor vehicle is limited to instances where "the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). At issue on appeal is whether Fakhouri sustained a serious impairment of a body function. In order to establish that he or she suffered a serious impairment of a body function, the plaintiff must prove that there is "(1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living)." *McCormick*, 487 Mich at 215. Whether a plaintiff meets that burden must be analyzed on a case-by-case basis because "it is inherently fact- and circumstance-specific" inquiry. *Id*.

On appeal, Fakhouri points out that the jury found that she sustained an injury as a result of the motor vehicle crash. She directs this Court to testimony from Dr. Neema Bayran, a board-certified physician specializing in anesthesiology and pain management who treated her following the crash. Dr. Bayran noted that Fakhouri had "spinal tenderness associated with pain," which he attributed to the crash. She also relies upon diagnostic evidence showing an injury to her cervical and lumbar spine. Dr. Bayran testified that the results of Fakhouri's various magnetic resonance imaging (MRI) scans revealed a 3-millimeter disc protrusion, a 4-millimeter disc herniation, and a number of annular tears in Fakhouri's spinal discs following the crash. Dr. Bayran indicated that

-2-

Fakhouri continued to suffer from pain in her neck, shoulders, lower back, left posterior thigh, in addition to headaches. He added that the physical examination of Fakhouri revealed tenderness over her midline cervical spine and paraspinal muscles on both sides, "aggravated by extension and loading of cervical facet joints[,]" in addition to a reduced range of motion concerning the flexion and extension of plaintiff's cervical spine, right shoulder, and lumbar spine. Dr. Bayran further testified that Fakhouri was diagnosed with "neck pain and cervical radiculopathy secondary to disc protrusion causing mild central and neuroforaminal narrowing bilaterally, causally related to a car accident on March 19, 2019," with a second working diagnosis of "[a]xial neck pain and headache secondary to cervical facet joint involvement[,]" and "[l]ower back pain and left lumbar radiculopathy." Dr. Bayran asserted that Fakhouri's spinal injuries were permanent, as "typically once you have basically disc protrusion, there is no reversal of that. Not even surgery can actually take the patient back to where it was." Similarly, Dr. Kevin Tu, a board-certified physician specializing in sports medicine and orthopedic surgery, provided similar testimony concerning the cause, nature, and extent of Fakhouri's injuries. He posited that Fakhouri's left shoulder impingement and adhesive capsulitis resulted from the underlying motor vehicle crash.

Although Dr. Bayran and Dr. Tu's testimony supports Fakhouri's position, they were not the only witnesses to testify regarding the nature and extent of Fakhouri's injuries. Dr. Barbara Heller, Dr. Adeel Khalid, and Dr. Richard Schmidt, conducted medical examinations of Fakhouri. Each fundamentally disagreed with the findings of Dr. Bayran and Dr. Tu.

First, Dr. Heller, a board-certified physician specializing in physiatry, testified that, while Fakhouri attributed her injuries to the underlying motor vehicle crash, her medical records revealed that she visited with her primary care physician on September 21, 2018, for persistent lower back pain, and rated her pain a 10 out of 10. Further, approximately two weeks before the crash, Fakhouri sought treatment with her primary care physician after she fell and injured her back and head. During that appointment, Fakhouri reported that she had experienced numbness and tingling in her hands for the past two or three years. During Dr. Heller's physical examination of Fakhouri, she observed that Fakhouri's lumbar spine and hip joint range of motion were full and pain-free, that Fakhouri possessed normal strength in all muscle groups in her legs, and that Fakhouri solely suffered from a mildly decreased range of motion in her left shoulder and neck. Following Fakhouri's evaluation, Dr. Heller opined that Fakhouri's "cervical and lumbar conditions are degenerative in nature" and that they were only temporarily exacerbated by the motor vehicle crash. She also disbelieved Fakhouri's claim that her carpal tunnel syndrome was caused by the crash because there were "medical records authored by her primary care physician that indicates symptoms consistent with carpal tunnel syndrome two to three years prior the motor vehicle accident." Dr. Heller concluded that Fakhouri "could do most anything she wanted that she was able to do prior to the motor vehicle accident[,]" as her range of motion was primarily preserved.

Next, Dr. Khalid, a board-certified physician specializing in radiology and neuroradiology, reviewed Fakhouri's May 10, 2019 cervical spine MRI, and noted that there was "no fracture of the bones, no slipping of the bones, no bleeding, no swelling, and none of [Fakhouri's spinal] discs were leaking any of the jelly from inside of the disc outside." Dr. Khalid opined that the MRI results reflected that of a normal 51-year-old woman, with no observable injuries related to the underlying crash. Dr. Khalid further reviewed various cervical spine and lumbar spine MRI scans of Fakhouri, and he testified that all of the aforementioned images depicted normal, age-appropriate, degenerative changes of the captured areas. With regard to the April 19, 2020 MRI

of Fakhouri's left shoulder, Dr. Khalid stated that the image portrayed "no fracture, slipping of the bones, dislocation, bleeding, swelling, or disruption of any of the tendons or ligaments[,]" however, there were age-appropriate degenerative changes of the tendons. Dr. Khalid ultimately stated that "[b]ased upon the objective findings, the MRIs, the [computed tomography (CT)] scan, the literature and all of the supportive evidence, I found no evidence of any objective finding of objective acute injury of the neck, low back or shoulder, and no change in the normal expected age-appropriate appearance of the neck and low back when I compared the MRIs done shortly after the accident to the MRIs done about a year after the accident."

Finally, Dr. Schmidt, a board-certified orthopedic surgeon, stated that (1) Fakhouri's clinical examination was objectively within normal limits regarding her neck, lower back, and left shoulder; (2) that she exhibited strong symptom magnification, and while she denied any prior history of injury to the aforementioned areas, her medical record indicated otherwise; (3) he agreed with the opinion of Dr. Khaled that the degenerative changes to Fakhouri's neck, back, and shoulder, were attributable to age, as opposed to the underlying motor vehicle crash; and (4) Fakhouri solely suffered soft tissue injuries due to the underlying incident, and that Fakhouri's carpal tunnel syndrome was distinct.

Given the differing opinions regarding the nature and extent of Fakhouri's injuries, the jury was free to determine what weight and credibility to afford to each witness when determining whether Fakhouri sustained a serious impairment of bodily function. See *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 491; 668 NW2d 402 (2003) (stating that "this Court recognizes the unique opportunity of the jury and the trial judge to observe witnesses and the fact-finder's responsibility to determine the credibility and weight of the testimony"). We conclude that, on this record, defendants presented sufficient competent evidence to support the jury's finding of no serious impairment of a body function. See *Shuler v Michigan Physicians Mut Liab Co*, 260 Mich App 492, 518; 679 NW2d 106 (2004) (noting that a motion for a new trial based on great weight of the evidence grounds should only be granted if "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand").

On appeal, Fakhouri focuses on the evidence that supports her position. She also equates the jury's finding that she sustained an injury with a finding that she sustained an objectively manifested impairment to her spine and shoulder. Viewing the evidence in the light most favorable to the jury, however, it is possible that the jury found she was injured in the crash given that she lost consciousness and given that there were photographs of glass fragments in her skin. They may have also found that she was injured because her preexisting conditions were exacerbated. That does not, however, mean that the jury was required to find that the injuries caused an impairment of an important bodily function or that it affected her general ability to lead her normal life. In this case, the trial court correctly chose not to substitute its judgment for that of the jury by reweighing the evidence in a light most favorable to Fakhouri. See *Barnes*, 334 Mich App at 551. As a result, the trial court did not err by denying Fakhouri's motion for JNOV and/or a new trial.

## III. TRIAL COURT MISSTATEMENT OF THE LAW

Fakhouri next asserts that the trial court misstated the law by imposing a temporal requirement when analyzing whether she had shown that there was a serious impairment of an

important body function. In *McCormick*, our Supreme Court explained that, with respect to whether an objectively manifested impairment of an important body function affected the plaintiff's general ability to lead his or her normal life, there is no temporal limit as to how long the plaintiff's life had to have been affected. *McCormick*, 487 Mich at 202-203. That does not, however, mean that temporal considerations are irrelevant. See *id*. at 222 (stating that "there is simply no basis [to conclude] that temporal considerations are irrelevant or that a momentary impairment is sufficient."); see also MCL 500.3135(5)(c) ("Although temporal considerations may be relevant, there is no temporal requirement for how long an impairment must last.").

Fakhouri points out that the trial court stated in its opinion denying her motions for JNOV and new trial that "even with the doctor saying that she had a[n] injury for weeks, *weeks isn't sufficient* and the jurors used all of the testimony that . . . was presented to them." (Emphasis added). Yet, the jury was free to determine—after weighing the evidence and witness credibility— whether "weeks" was sufficient or was insufficient in this particular case. The mere fact that it found against Fakhouri does not render the verdict against the great weight of the evidence, nor mandate a new trial. The trial court's comment, although somewhat inartful, recognizes that the matter could not be resolved as a matter of law because there was conflicting evidence as to the nature and extent of Fakhouri's injuries. See MCL 500.3135(2)(a) (providing that whether there is a serious impairment of an important body function can be determined as a matter of law when there is *not* a factual dispute concerning the nature and extent of the person's injuries). Indeed, the court correctly determined that the matter of whether Fakhouri suffered a serious impairment of an important body function was a credibility issue pertaining to the jury, that the jury was free to determine which physician's testimony "to believe, to what extent they believe, and how much they believe[,]" and that while the jury agreed that Fakhouri sustained injuries because of the crash, the evidentiary record included details regarding Fakhouri's previous fall in the driveway and other health issues. The trial court noted that the jury found that "there was an injury but they didn't think that the injury was of a serious impairment of a body function, based on what they heard and what they—what they gleaned and that was fully within their province." Viewed in context, then, it is clear that the court did not improperly impose a temporal requirement upon Fakhouri's case. Instead, it left the disputed matter in the care of the jury and, because the jury verdict was properly supported, it did not overturn it based upon the conflicting evidence highlighted by Fakhouri in her motion.

Affirmed. Defendants may tax costs as the prevailing parties. MCR 7.219(A).

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly