*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SEBRINA CRAWFORD,

           Plaintiff/Counterdefendant-Appellee,

v

WAYNE COUNTY INVESTMENT GROUP, INC.,
GREAT LAKES PROPERTY & INVESTMENTS
SERVICES, INC., GREAT LAKES PROPERTY &
INVESTMENT, INC., GREAT LAKES
PROPERTY & INVESTMENTS, INC., and
JASMINE MCMORRIS,

           Defendants/Counterplaintiffs,

and

LORI SPRATT,

           Defendant/Counterplaintiff-Appellant,

and

WINNING SEASON LLC,

           Intervenor.

UNPUBLISHED
November 20, 2025
9:43 AM

No. 367646
Wayne Circuit Court
LC No. 2018-005370-CH

Before: GARRETT, P.J., and PATEL and YATES, JJ.

PER CURIAM.

In simple terms, this case involves a dispute about the ownership of real property and the damages incurred by plaintiff, Sebrina Crawford, while that dispute was raging. But on this appeal, the case is shrouded in mystery because defendant, Lori Spratt, did not order several transcripts of

-1-

hearings that reflect how the protracted, contentious litigation unfolded in the trial court.[1]  Despite the lack of crucial transcripts, we can determine that the trial court correctly awarded the property at issue to plaintiff.  Accordingly, we affirm.

## I.  FACTUAL BACKGROUND

At the heart of this case is a parcel of property located at 2619 W. 8 Mile Road in Detroit. Plaintiff alleges that, in February 2012, she entered into a land contract agreement with a company called Net Management LLC regarding the property.  Plaintiff agreed to pay $15,000 over a three-year period, including a $5,000 down payment.  She agreed to pay $327.39 each month in principal and interest, and $206.08 each month in taxes, special assessments, and insurance.  Plaintiff claims that defendant Lori Spratt and her ex-husband, Len Spratt, were members of Net Management.  As the record reveals, plaintiff made monthly payments to Lori Spratt at the Net Management office. According to plaintiff, she lived at the property with her family beginning in February 2012.

In 2014, Net Management filed an action—separate from the instant case—in district court for non-payment of rent on the property.  The district court dismissed that action, stating that the contract between the parties was a land contract.  While that case was pending, plaintiff deposited nearly $4,000 in an escrow account, which the district court released to plaintiff at the conclusion of the case.  Plaintiff asserts that, after that case ended and the district court released the funds, she paid the remaining balance due on the land contract.  Walter Spratt, Len Spratt's father who was a member of Net Management, executed a quitclaim deed transferring ownership of the property to plaintiff.  Len Spratt delivered the deed to plaintiff on October 31, 2014, but plaintiff did not record the deed until March 2018.

Len and Lori Spratt divorced in 2016.  As part of their divorce settlement, Lori Spratt was awarded the parcel of property at issue in this case.  She recorded a quitclaim deed transferring the property from Net Management to herself on October 4, 2016.  On October 19, 2017, Lori Spratt executed a quitclaim deed that transferred ownership of the property to Wayne County Investment Group, which recorded the deed on October 25, 2017.  Plaintiff contends that Lori Spratt and a co-defendant, Jasmine McMorris, were the primary members of Wayne County Investment Group.

In October 2017, Great Lakes Property & Investment Services, Inc. (Great Lakes Property), served plaintiff with a "Notice to Quit to Recover Possession of Property," informing plaintiff that she had to vacate the property by November 26, 2017.  Plaintiff asserted that Great Lakes Property was the company with which Wayne County Investment Group contracted to manage the property. Plaintiff alleged that Lori Spratt and McMorris repeatedly entered the property, removed plaintiff's belongings, threatened her in an attempt to get her to leave the property, damaged the real property and plaintiff's personal property, and took plaintiff's pets.  Plaintiff reported all that to the police.

---

[1] Defendant moved in the trial court for leave to furnish a limited number of transcripts in this appeal, and the trial court granted that motion, but defendant did not obtain the limited number of transcripts that the trial court described.  For example, the trial court ordered that defendant had to provide transcripts for "[a]ny and all hearings that took place after February 8, 2021," but several hearings that took place after February 8, 2021, were not transcribed for this Court's benefit.

As a result of all those actions, plaintiff and her family had to leave the property and move in with plaintiff's adult daughter.

Plaintiff recorded her land contract interest on January 26, 2018, and recorded her quitclaim deed on or about March 26, 2018. On April 6, 2018, Great Lakes Property filed a termination-of-tenancy action in 36th District Court.

On May 14, 2018, plaintiff filed a complaint initiating the instant case. Plaintiff set forth several claims, including (1) quiet title, (2) illegal ejectment, (3) statutory conversion, (4) common-law conversion, (5) common-law slander of title, (6) statutory slander of title, and (7) intentional infliction of emotional distress.[2] Because defendants did not answer the complaint, the trial court entered defaults and a default judgment, which were later set aside by stipulation of the parties. In the wake of that event, defendants answered the complaint, and they also filed a countercomplaint, setting forth claims against plaintiff of (1) quiet title, (2) slander of title, (3) fraud, and (4) innocent misrepresentation. In May 2019, defendants amended their countercomplaint to add claims of (5) rescission of a land contract, (6) land-contract foreclosure, and (7) breach of a land contract.

Once the pleadings were in place, each side unsuccessfully moved for summary disposition of the opposing side's claims. But plaintiff sought leave to appeal the trial court's August 22, 2019 order denying her motion for summary disposition, and this Court granted peremptory reversal of the portion of that order denying plaintiff summary disposition of defendants' fraud and innocent-misrepresentation counterclaims. *Crawford v Wayne Co Investment Group, Inc*, unpublished order of the Court of Appeals, entered January 13, 2020 (Docket No. 350581). The trial court thereafter issued an order dismissing the fraud and innocent-misrepresentation counterclaims, so defendants amended the countercomplaint to remove the counts of fraud and innocent misrepresentation, thus reducing the number of counterclaims from seven to five.

On August 23, 2019, defendants moved for summary disposition, arguing that Lori Spratt's deed received in her divorce was recorded before plaintiff recorded her deed, and that plaintiff did not have a valid deed to the property. Defendants argued that Lori Spratt was entitled to a judgment of quiet title under the race notice statute because she recorded her deed to the contested property before plaintiff recorded her deed. In a supplemental brief, defendants made clear that they were requesting summary disposition pursuant to MCR 2.116(C)(7), (8), and (10). Plaintiff responded, and defendants replied.

The trial court held a hearing on the motion for summary disposition on October 22, 2019. Defendants reiterated the claim that, as an undisputed matter of fact, Lori Spratt recorded her deed first. That is, Lori Spratt recorded her deed on October 4, 2016, and plaintiff recorded her deed on March 26, 2018. Plaintiff did not dispute the recording dates, but she contended that that did not matter because Lori Spratt was not a purchaser in good faith, that Lori Spratt had actual notice that plaintiff had a land contract and a valid title, and that plaintiff's deed was executed in 2014, earlier than Lori Spratt's deed. The trial court stated that all that mattered was which deed was recorded

---

[2] Defendant Great Lakes Property & Investments, Inc., was later dismissed without prejudice "due to the automatic stay associated with the bankruptcy filing for this party." That does not appear to have had any impact on the status of the similarly-named co-defendant, Great Lakes Property.

first. Defendants insisted that, in the divorce document, Lori Spratt's ex-husband represented that he had not deeded any properties to any other person, and that he had a full ownership interest in each of the properties.

The trial court stated that, "relative to what was recorded here, it is clear that the title vested in the defendant, Lori Spratt." Plaintiff then contended that she had paid off the land contract, so even if her 2014 deed was invalid, she nonetheless was the rightful owner of the contested property because she had paid off the land contract. The trial court explained that that issue was "something for another day" because defendants were "disputing whether or not it's been fully paid off." After the hearing, the trial court granted quiet title to Lori Spratt.

In May 2020, in an attempt to keep the matter progressing during the COVID-19 pandemic, defendants moved to bifurcate the case. Defendants requested that the trial court either "bifurcate the trial so that the court can hold a trial on the legal issues and allow the jury to hear the remaining claims and/or on the equitable issues and those where the facts are not in dispute via a Motion for Summary Disposition and allow the jury to hear the remaining claims." Plaintiff not only opposed bifurcation, but also requested an "advisory jury." Plaintiff asked the trial court to conduct a jury trial "for all triable issues and to utilize the jury as an advisory jury on any equitable claims rather than holding a separate bench trial." Defendants responded, contending that the trial court was "responsible for making findings of fact regarding the interest in the land as it relates to the Quiet Title claim." Defendants observed that, although the trial court "ha[d] partially ruled on the second component of the claim and ruled that Lori Spratt's deed is superior" to plaintiff's deed, the trial court had not "rule[d] on the more complicated issues concerning the parties' rights, remedies and damages as it relates to the property." Defendants explained that "although Lori Spratt was granted Quiet Title, her title is not in fee simple due to the underlying land contract." Also, "[t]he relevant court rule and the Quiet Title statute make it clear that the rights, remedies and damages portion of the Quiet Title claims are equitable claims that must be decided by the Court." Consequently, although the trial court had "previously decided the issue of title, [that court] still needs to decide the issue of the rights of the parties with respect to the property." Accordingly, while a trial court "can choose to make these findings of fact during the same time as the jury trial, [that court] does not have the discretion to allow the jury to make these findings."

On June 5, 2020, the trial court conducted a hearing on the issue of bifurcation. In arguing for a bifurcated trial, defendant asserted that "when you have a quiet title action, it is the Court's province to determine the interest in land." The following exchange then took place concerning how the case would proceed:

> [*Defendants' Counsel*.] [W]e shall, actually, file a motion for summary disposition on the rescission of land contract matter, as well as a separate motion for summary disposition, regarding—or not a summary disposition, but rather a motion to determine the interest in land, regarding the quiet title remedy that was previously granted.
>
> *The Court.* Yes.

-4-

At a subsequent hearing on July 20, 2020, defendant reminded the trial court that "all the issues concerning the property are going to be decided by you." At another hearing several months later, defendant said there were "motions on the legal issue but there's no bench trial plan for this case."

Based on the June 5, 2020 hearing, the parties filed the specified motions. On July 8, 2020, plaintiff moved for summary disposition under MCR 2.116(C)(7), (8), and (10), seeking dismissal of defendant's counterclaims of rescission of the land contract and foreclosure of the land contract. After defendants responded to plaintiff's summary disposition motion, plaintiff filed a supplement to her motion to address new facts and theories raised in defendants' second amended complaint. Plaintiff also filed a reply.

Also on July 8, 2020, defendants submitted their own motion seeking summary disposition in their favor on the same counts. Plaintiff responded to that motion. In addition, on July 8, 2020, plaintiff asked the trial court to "determine interests" in the property. On that same day, defendants likewise requested that the trial court determine the interest in the land. Neither of those motions was styled as a summary disposition motion. Instead, they requested that the trial court determine the rightful owner of the property. Thus, both sides asked the trial court to decide that they owned the property and award other relief stemming from that decision.

At a hearing on November 19, 2020, the trial court addressed the competing motions from the parties. But the trial court determined that an evidentiary hearing was necessary because it did not think it could make a ruling as a matter of law. The trial court identified the question as "what type of interest does [plaintiff] have," and plaintiff said she was "asking the Court to make a finding that she completed her payments and enter an order requiring [Lori Spratt] and the other defendants to deed the property to her." Defendants responded that plaintiff had not made the payments due under the land contract. The trial court then stated:

> I might be able to do—make a decision—as a matter of law you, as to whether or not there's a rescission or a foreclosure on the property but I need to have an evidentiary hearing on the issue of the—the—to determine the interest in land and I think I can do that, by an evidentiary hearing.
>
> * * *
>
> [M]y evidentiary hearing will solely be on the issue of the determination of the interest in land and if there's a—a need to deal with it, and I'll make a determination, after that, on the rescission—on the rescission or whether or not there's a land contract.
>
> * * *
>
> [T]his is an issue to be resolved by an evidentiary hearing.

Plaintiff stated that if there were an evidentiary hearing, "as long as there are no claims that implicate the same claims that would be before the jury, then there's not an issue." The trial court explained that there would not be a "full-blown trial." It would be "just an evidentiary hearing." Defendants were largely silent during the discussion, and they certainly did not voice any objection to the proposed procedure for addressing this issue.

-5-

The trial court held an evidentiary hearing on February 8, 2021. Going into that evidentiary hearing, there were competing motions for summary disposition on defendants' counterclaims for rescission or foreclosure of the land contract, as well as competing motions "to determine interests in land." At the outset, the trial court explained what was at issue: " . . . let me say what I'm doing. The interest in land, and then whether or not [plaintiff] paid off her land contract or whether the rescission can't stand. So, that's what, you know, based upon the motions that we have, that's all. And then . . . if there's damages, there'll be a . . . separate determination on damages." The trial court made clear that only the parties would be permitted to testify at the hearing. But despite that limitation, the trial court allowed the submission of affidavits from people other than the parties, including an affidavit from Len Spratt.

During the hearing, plaintiff testified that she had paid $5,000 in cash up front to purchase the home. She met with Len Spratt and signed the land contract with him. She believed that Len Spratt represented Net Management. Lori Spratt was identified as the selling agent on the contract. The agreed price was $15,000. Plaintiff paid Len Spratt $5,000 in cash, and she was to pay off the remaining balance over the course of about two years. The monthly payment was $533—$327 for principal and $206 for taxes.

According to plaintiff, she often gave her monthly payment to Lori Spratt, but occasionally she put the monthly payment in the drop box at Net Management. Sometimes when she paid, she received a receipt, but that did not happen every time. Plaintiff said that she made all the monthly payments in 2012. She explained that she began paying in 2013, but she stopped paying after she received notices on her door "from like the tax company." After she received that notice, plaintiff contacted Lori Spratt about the tax notices. Lori Spratt assured her that there was nothing to worry about. Plaintiff said she discovered that the taxes were not being paid, so she started withholding her payments to Net Management. When she withheld the payments, Net Management sent her a letter of eviction. Net Management then sued plaintiff, but that case was later dismissed because the court found that the disputed land was not a rental property. That case lasted about a year, and Lori Spratt was present at hearings.

Defendants and the trial court acknowledged that the judge in the eviction case concluded that plaintiff had a land contract and that she had paid $5,000. During that case, plaintiff paid into an escrow account for 6 to 8 months. At the end of that case, the court released the escrow money to plaintiff in a check for $3,900. At that point, Len Spratt asked plaintiff to pay the rest of what she owed on the land contract and said he would then give her the deed. Plaintiff asked Len Spratt how much she owed, and he asked her how much money she had. Plaintiff told him that she had $3,000, and he said that was fine, so she paid him $3,000. After plaintiff paid Len Spratt in cash, she received a receipt that said "paid in full." Plaintiff gave the trial court an affidavit from Len Spratt that supported that version of events. Plaintiff did not know that she had to record the deed.

Plaintiff filed for bankruptcy in late 2015. During the course of the bankruptcy proceeding, plaintiff did not provide the trustee with a copy of the quit claim deed for the property. Plaintiff said that she did not think that she owed money to Net Management when she filed for bankruptcy, and any incorrect information submitted in the bankruptcy proceeding was outdated and the result of a delay between when she filled out the paperwork and when she filed for bankruptcy. Plaintiff said that, by the end of 2014, she believed that she owned the property. Coincidentally, Lori Spratt likewise filed for bankruptcy in 2014.

Lori Spratt testified, explaining that since her divorce was final on February 26, 2015, she had paid $3,000 in insurance on the property and $1,700 on the property taxes. Lori Spratt stated that she was given the disputed property as part of her divorce. According to Lori Spratt, Walter Spratt owned the contested property in 2012 and deeded the property to her in 2014. She said that plaintiff came to her office to make "her rental payments."

In closing, plaintiff reiterated the procedural posture of the case: only the rescission claim was being resolved on summary disposition. The issue of the interest in land was not being decided by summary disposition. The trial court rendered findings of fact and conclusions of law, deciding that, in 2012, plaintiff entered into a purchase agreement with Len Spratt and paid $5,000. The land contract was to be paid off in three years. The trial court found that plaintiff paid for the first two years. Once plaintiff received the tax notice, she stopped making payments. Eventually, there was an agreement between plaintiff and Len Spratt that plaintiff had paid the land contract in full on December 15, 2014, after making a final payment of $3,000. A quitclaim deed was issued. The trial court acknowledged its prior determination that Lori Spratt's deed was superior to plaintiff's deed, "but the fact of the matter remains is that we did have a land contract here" and plaintiff "did pay on it." It noted that the 36th District Court had determined that there was a valid land contract. "The fact of the matter remains is [plaintiff] had a valid land contract, which the Court finds that she did successfully fulfill[.]" The court noted that, as the trier of fact, it can "look at the evidence and you can weigh it however you deem appropriate." The trial court explained that it "has to take the evidence in the light most favorable to the nonmoving party here and the innocent person was [plaintiff]." The trial court then granted plaintiff's motion regarding the interest in the land.

Next, the trial court addressed rescission of the land contract, determining that plaintiff was an innocent party, even if there might have been fraud committed by Len Spratt. The court ruled that there was no mutual mistake, and the court found no basis to support foreclosure. Therefore, the court commented that Lori Spratt would have to attempt to seek relief in the family court.

On February 12, 2021, the trial court issued an order memorializing its rulings. That order created confusion because, despite the fact that the motions to determine interests in land were not styled as motions for summary disposition, the trial court stated that "there is no genuine issue of material fact that the land contract was satisfied pursuant to the December 2014 receipt stating that the land contract was satisfied and pursuant to additional reasons stated on the record." The trial court then explained that plaintiff's motion to determine interests in land was granted, and denied defendant's competing motion. Next, the trial court ordered defendants to execute and deliver a quitclaim deed conveying their interest in the property to plaintiff. The court also stated that there were no grounds for rescission, nor any basis for foreclosure, so it dismissed those counterclaims. Lori Spratt moved for reconsideration of the order to determine the interest in land and to convey title, but the trial court denied that motion.

Subsequently, defendants' counsel moved for permission to withdraw from the case. At a hearing on September 3, 2021, the trial court allowed that withdrawal. At the hearing, the attorneys discussed the previously scheduled special conference set for October 4, 2021. Plaintiff noted that some defendants were corporations that needed to be represented by attorneys, and that she would seek a default judgment against those defendants if they did not retain counsel. The trial court told defendants' departing counsel that he had to prepare an order and make sure it went to his clients indicating that they had 21 days to retain new counsel. The trial court commented on the record

that defendants had to appear at the October 4, 2021 hearing "with or without counsel," and that it would "entertain your motions on that day, depending upon what transpires," presumably referring to motions for default.

Defendants failed to appear at the October 4, 2021 conference, so the trial court entered a default as to all defendants. The Register of Actions reflects that a special conference was held on October 4, 2021, but there is no transcript in the lower-court record from any such conference on that date. The trial court's order of default stated:

> The Court being fully advised, and the Defendants having failed to appear at the Special Scheduling Conference, the Court orders as follows:
>
> IT IS HEREBY ORDERED that Default is Entered against Defendants Wayne County Investment Group, Inc, Great Lakes Property & Investment Services, Inc., Great Lakes Property & Investment, Inc., Great Lakes Property & Investments, Inc., Lori Spratt, and Jasmine McMorris.

Next, plaintiff moved for entry of a default judgment against all defendants in the amount of $432,475. In that motion, plaintiff asserted that a special conference was held on October 4, 2021, and at the conference, she had moved for, and was granted, a default against each defendant.

Lori Spratt filed a response to plaintiff's request for a default judgment as well as a motion for default judgment in her own favor. The other defendants also moved to set aside the default. Oral argument took place on February 18, 2022, and March 25, 2022, to address plaintiff's motion for a default judgment, but defendant has not furnished transcripts of those hearings. What we do know is that the trial court issued an order granting plaintiff's motion for default judgment and set a hearing to consider the amount of damages. Lori Spratt moved to set aside the default judgment, and the other defendants moved to set aside the default. Plaintiff responded to the motions to set aside the default. The trial court held a hearing on those motions on May 10, 2022, but defendant has not furnished a transcript of that hearing to this Court.

The motion to set aside the default judgment was denied in relevant part, and the trial court ordered that damages would be decided at a jury trial. Defendants filed two appeals to this Court, but both were dismissed for lack of jurisdiction. *Crawford v Wayne Co Investment Group, Inc*, unpublished order of the Court of Appeals, entered June 8, 2022 (Docket No. 361616); *Crawford v Wayne Co Investment Group, Inc*, unpublished order of the Court of Appeals, entered June 8, 2022 (Docket No. 361632).

Defendants McMorris, Wayne County Investment Group, and Great Lakes Property moved for disqualification of the trial-court judge, asserting that Lori Spratt had filed a complaint against the trial-court judge with the Judicial Tenure Commission, which was investigating that complaint. They argued that that complaint created a bias against all defendants. The trial-court judge recused herself, so the matter was reassigned to a different judge.

A two-day jury trial on plaintiff's damages took place in May 2023. At the conclusion of that trial, the jury awarded plaintiff $159,000 against only Lori Spratt. The jury's verdict consisted of $22,000 for property damage, $6,000 for repair expenses, and $25,000 for mental anguish and mental distress, which was then trebled. Defendants orally moved to vacate the treble damages,

which the trial court granted. The trial court subsequently entered a judgment awarding plaintiff $53,000 for her claims of intentional infliction of emotional distress and common-law conversion.

One party filed an appeal, which this Court dismissed for lack of jurisdiction. *Crawford v Wayne Co Investment Group, Inc*, unpublished order of the Court of Appeals, entered August 8, 2023 (Docket No. 366890). The trial court then entered a stipulated order of dismissal concerning defendants Wayne County Investment Group, Great Lakes Property, and McMorris.

Lori Spratt filed the instant appeal on September 6, 2023. Months later, on November 30, 2023, plaintiff filed for bankruptcy. Additionally, while this appeal was pending, Lori Spratt filed a motion in the trial court "to limit the record on appeal," asking that she not be required to provide this Court with all of the transcripts from the numerous trial-court hearings that occurred. The trial court granted that request.

Despite this pending appeal, Lori Spratt continued to litigate this case in the trial court. On June 4, 2024, she filed a motion to vacate both the February 12, 2021 order and the June 23, 2023 judgment. The trial court rejected that submission pursuant to MCR 7.208(A) because it could not amend the judgment while the instant appeal was pending.

## II. LEGAL ANALYSIS

On appeal, defendant contends that plaintiff lacks standing and her claims are moot, so this Court must dismiss this appeal and vacate the trial court's judgment. Defendant also contests the trial court's February 12, 2021 order, which required her to execute and deliver a quitclaim deed to plaintiff. She asserts that that order was the product of impermissible procedures, that the trial court improperly limited testimony at the February 8, 2021 hearing that produced the February 12, 2021 order, and that the trial court's ruling in that order was not supported by sufficient evidence. Further, defendant challenges the trial court's November 1, 2021 order entering a default, insisting that it was improper to default her for missing one status conference. We will address these issues in turn.

## A. STANDING AND MOOTNESS

Defendant's statement of questions involved begins with a procedurally vexing argument. Specifically, defendant blends the prudential doctrines of standing and mootness to ask this Court to dismiss the appeal that she brought. Although it may be tempting to dismiss the appeal on that basis, and thereby avoid addressing the numerous other issues that defendant raises, the argument is meritless. Thus, we must deny relief on that claim of appeal for several reasons.

Defendant argues that plaintiff lost standing and rendered this case moot when she filed for bankruptcy on November 30, 2023, and failed to disclose this case in her bankruptcy petition. By that point, the judgment had been entered in the instant case, so defendant argues that plaintiff lost standing after this matter ended in the trial court. In other words, plaintiff had standing to pursue her claims in this case from the date when she filed her complaint through the date when the final judgment was entered. But months after the entry of the final judgment, plaintiff took actions that divested her of standing and rendered the instant case moot.

Defendant did not raise standing or mootness in the trial court until months after she filed this appeal, so her claim is unpreserved. "In civil cases, Michigan follows the 'raise or waive' rule of appellate review." *Tolas Oil & Gas Exploration v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023). For unpreserved claims, this Court has no obligation to consider the issue. *Id.* But "this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id.* at 289-290 (quotation marks and citations omitted). Here, we find no grounds to take up defendant's unpreserved argument concerning standing and mootness. But even if we were inclined to consider the issue on the merits, we would find no basis for relief.

"[A] litigant has standing whenever there is a legal cause of action." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010). "Generally, standing is assessed at the outset of the case." *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 590; 957 NW2d 731 (2020). "The party's interest must persist as the case goes forward—if it does not, the case becomes moot." *Id.* at 591. Defendant insists that plaintiff lacks standing and this appeal is moot, but that argument is nonsensical, and it does not reflect the outcome that defendant wants, as evidenced by the fact that defendant asks this Court to declare the appeal moot or divest plaintiff of standing, but also to vacate the order and judgment the trial court entered in plaintiff's favor. Granting relief by vacating a judgment of the trial court is fundamentally incompatible with dismissal of the appeal on standing or mootness grounds. Dismissal on the basis of either standing or mootness ends the case. Once dismissal occurs, a court cannot render a decision on the merits. Here, dismissal of the appeal in this case at defendant's behest would prevent us from considering the merits of defendant's appeal, so the dismissal she seeks would be self-defeating. Accordingly, we will not dismiss the appeal for mootness or lack of standing, which benefits defendant because it enables this Court to consider her challenges to the judgment entered against her.

## B. PURPORTED PROCEDURAL IRREGULARITIES

Defendant argues that the evidentiary hearing held on February 8, 2021, that resulted in the February 12, 2021 order quieting title in plaintiff involved a procedure not recognized by Michigan law. Specifically, plaintiff had no proper cause of action or motion pending when the evidentiary hearing took place, and the notice of the hearing made no mention of plaintiff requesting relief, so the trial court had no basis to grant relief to plaintiff. But the record belies defendant's argument, and defendant has made no effort to demonstrate how the issue has been preserved for our review. Under MCR 7.212(C)(7), an appellant is required to include in her brief "[p]age references to the transcripts, the pleadings, or other document or paper filed with the court . . . to show whether the issue was preserved for appeal by appropriate objection or other means." Defendant's brief lacks any discussion of whether the issue was preserved, and the brief does not direct us to anything that establishes that preservation of the issue occurred in the trial court. In spite of that hindrance, we have scoured the record for support for defendant's description of what happened in the trial court, and our review leads us to the conclusion that defendant has mischaracterized what occurred.

On July 8, 2020, plaintiff requested that the trial court "determine interests" in the property at issue. On that same day, defendants requested that the trial court determine the interest in the land. After that, defendants responded to plaintiff's land-interest motion, and plaintiff responded to defendants' land-interest motion. Finally, plaintiff replied to defendants' response. Therefore,

plaintiff did have a motion pending to "determine interests in land," and she asked the trial court in that motion to rule that she had satisfied the land-contract obligations, so defendants should be ordered to provide plaintiff with title to the property. Similarly, Lori Spratt requested a ruling in her favor on the contested property.

The trial court held a hearing on the motions, and at that hearing the trial court determined that an evidentiary hearing was necessary to resolve the competing motions. During that hearing, plaintiff's attorney commented that they were "asking the Court to make a finding that [plaintiff] completed her payments and enter an order, requiring [Lori Spratt] and other defendants to deed the property" to plaintiff. The trial court stated that it needed "to have an evidentiary hearing . . . to determine the interest in land." The trial court said that it would not be a "full-blown trial; it's just an evidentiary hearing and it would be probably just the—the plaintiff and the defendant, Lori Spratt." Neither side objected to conducting an evidentiary hearing or to the trial court's statement that it would just be plaintiff and defendant testifying at the hearing.

On November 24, 2020, the trial court entered a scheduling order, which directed that "an evidentiary hearing limited to the issue of determining the parties' interests in land shall be held on February 8, 2021, at 9:30 a.m." The parties also signed a document titled "Joint Final Pre-Trial Order for Evidentiary Hearing on February 8, 2021." The document, which defense counsel signed three days before the hearing, laid out what plaintiff sought at the hearing:

> Plaintiff is simply seeking to quiet title based on her completed land contract payments. All of her claims seeking damages beyond her interest in the property are reserved for the yet to be scheduled jury trial.

Beyond that, the order stated that the case "is scheduled for an evidentiary hearing on the parties' motions for summary disposition and motions regarding interest in land on Monday, February 8, 2021 at 9:30 a.m. via zoom." In her brief attached to the final pre-trial order, plaintiff asked that the court "enter an order quieting title in her favor and dismissing Defendants' claims for rescission and foreclosure." Defendant's claim on appeal that the "hearing was not noticed to consider any Crawford motion seeking affirmative relief—only motions seeking summary judgment on Spratt's claims," which suggests that defendant was unaware that the court might grant relief to plaintiff at the hearing, is simply absurd.

Despite the fact that the evidentiary hearing was planned for months, and it was discussed at length by the parties and the trial court, defendant on appeal has not identified a single instance in which she objected to the suggested procedure or made any attempt to argue that such a hearing was procedurally improper. It was crystal-clear for months leading up to the hearing that the trial court intended to use the evidentiary hearing to determine the parties' interests in the disputed land, and that the evidentiary hearing could result in the issuance of an order quieting title with plaintiff. Defendant lodged no objection to that procedure in the trial court, so she waived her right to contest the procedure on appeal. *Tolas Oil*, 347 Mich App at 289.

Turning to the merits even though we need not do so, the evidentiary hearing conducted by the trial court had some hallmarks of a bench trial on the issue of quieting title. Neither side moved for summary disposition on that issue. Instead, that issue was the subject of the parties' competing motions to "determine interest in land," and those motions were invited by the trial court. Prior to

that, defendant had moved to bifurcate the trial and have the trial court, rather than a jury, hear the equitable claims—including the quiet-title claim.

The parties' consideration of bifurcation was the result of the COVID-19 pandemic, which put all jury trials on hold. In arguing for a bifurcated trial, defendant insisted that "when you have a quiet title action, it is the Court's province to determine the interest in land." That is precisely what the trial court did at the evidentiary hearing, yet defendant now faults the trial court for grave procedural error in conducting that hearing. The motions that the parties filed for a determination of their interests in land were not requests for summary disposition. Rather, the trial court was just going to decide that issue after considering evidence. This was made clear at an earlier hearing:

> *Defendant's Counsel*. [W]e shall, actually, file a motion for summary disposition on the rescission of land contract matter, as well as a separate motion for summary disposition, regarding—or not a summary disposition, but rather a motion to determine the interest in land, regarding the quiet title remedy that was previously granted.
>
> *The Court*. Yes.

Defendant did not object to that procedure. Instead, she invited it, and she argued against presenting the claim to a jury. Defendant cannot seek relief on appeal based on a procedure that she helped develop, understood in advance, and never once challenged in the trial court. *Tolas Oil*, 347 Mich App at 289.

## C. LIMITATION OF WITNESSES

Defendant blames the trial court for limiting the witnesses at the evidentiary hearing to the competing parties, i.e., plaintiff and defendant Lori Spratt. Specifically, defendant complains that the trial court should have permitted Len Spratt to testify at the hearing. Consideration of the issue is foreclosed because defendant never raised the issue in the trial court. *Tolas Oil*, 347 Mich App at 289. Moreover, the record demonstrates that defendant assented to the trial court's approach to the witnesses at the evidentiary hearing.

In a stipulated joint pre-trial order, plaintiff wrote that the court had "already held that only Lori Spratt and Sebrina Crawford may testify in" the evidentiary hearing. During that hearing—before testimony was presented—plaintiff's attorney asked to "make sure that no other witnesses, other than [plaintiff] and [defendant] were testifying." The trial court responded: "I already told you. You know what the court said, parties only." Defendant neither expressed any objection nor asked any questions of the court.

Defendant has not identified any place in the lower-court record where she expressed any interest in calling Len Spratt as a witness. In what was labeled as a "final pre-trial order" entered October 8, 2020, Len Spratt is included as a witness on *plaintiff's* witness list, but not defendant's witness list. Another "final pretrial order" signed by both sides and issued on November 17, 2020,

listed Len Spratt as a witness on plaintiff's witness list, but not defendant's witness list.[3] Finally, the trial court characterized Len Spratt as a "culprit," and called it a problem that they did not have him there. In response, defense counsel stated: "I don't think we need Mr. Spratt for this." Hence, plaintiff might have been aggrieved by the trial court's unwillingness to hear from Len Spratt as a witness, but nothing in the record gave rise to an objection on defendant's part with respect to Len Spratt, so defendant has not established any right to relief for Len Spratt's absence at the hearing.

## D. SUFFICIENCY OF THE EVIDENCE

The trial court found, as a matter of fact, that plaintiff fulfilled all of her obligations under the land contract, so she was entitled to the contested property. Defendant asserts that that finding of the trial court was not supported by sufficient evidence. "This Court reviews challenges to the sufficiency of the evidence" in a civil case as follows: "we review the evidence and all legitimate inferences in the light most favorable" to the party who prevailed at trial. *Taylor v Kent Radiology, PC*, 286 Mich App 490, 499; 780 NW2d 900 (2009) (quotation marks and citations omitted). This Court should grant relief on a challenge to the sufficiency of the evidence "[o]nly if the evidence so viewed fails to establish a claim as a matter of law." *Wilkinson v Lee*, 463 Mich 388, 391; 617 NW2d 305 (2000). Applying that deferential standard, we find no basis to disturb the finding of the trial court that plaintiff satisfied her obligations under the land contract.

At the evidentiary hearing, plaintiff not only testified that she entered into a land contract and thereafter made all the required payments, but also provided documents to support her claim. As the trial court observed, "we saw, from Exhibit 1, that there was a purchase agreement that was entered into with . . . the land contract addendum and it articulated the purchase price of $15,000, it articulated the down payment of $5,000, had the last six digits of Ms. Spratt's agent ID number on it and we know that that was the agent ID number that was at issue." Further, "the land contract addendum indicates the paragraph that the $5,000 deposit was made[.]" The trial court noted that plaintiff "paid off the first two years and maybe she was late but it was indicated that she would pay the late fees and so forth." "[O]nce she started getting the notices of the foreclosure for taxes, she became alarmed and didn't pay for awhile and that's when the issues came to light[.]" Finally, "there was an agreement with Mr. Spratt and we have the exhibit is Exhibit 4, which indicates that, on December 15, 2014, that [plaintiff] paid this in full and that, apparently, a quitclaim deed was issued." Plaintiff "held on to this receipt, showing that she had finished doing what she had to do, once they agreed upon the $3,000 in a final payment." Indeed, the record includes the receipt from Net Management to plaintiff stating that the "land contract" was "paid in full" with "cash" in the amount of "$3,000.00." Thus, the trial court's finding was supported by plaintiff's testimony and documents reflecting the series of events that plaintiff described in her testimony. Consequently, the record contains sufficient evidence to support the trial court's finding that plaintiff fulfilled all of her obligations under the land contract.

---

[3] Defendant named 11 potential witnesses, but Len Spratt was not among those named.

## E. ENTRY OF DEFAULT

Defendant contends that the trial court abused its discretion when it defaulted defendant on the issue of liability after she missed a single status conference after her counsel had just withdrawn from the case. "The trial court's decision to enter a default is reviewed for an abuse of discretion." *ISB Sales Co v Dave's Cakes*, 258 Mich App 520, 526; 672 NW2d 181 (2003).

Defendant's attorney moved to withdraw on June 21, 2021. A hearing on that motion was scheduled for September 3, 2021. At that hearing, the trial court allowed the attorney to withdraw, and then referred to the next conference on October 4, 2021. But the order permitting withdrawal was not entered until September 29, 2021, so the order referring to the October 4, 2021 conference was issued just five days before that conference.

Under MCR 2.401(G)(1), "[f]ailure of a party or the party's attorney or other representative to attend a scheduled conference . . . may constitute a default to which MCR 2.603 is applicable or a ground for dismissal under MCR 2.504(B)." But "[t]he court shall excuse a failure to attend a conference . . . and shall enter a just order other than one of default or dismissal, if the court finds that (a) entry of an order of default or dismissal would cause manifest injustice; or (b) the failure was not due to the culpable negligence of the party or the party's attorney." MCR 2.401(G)(2).

Significantly, defendant does not assert on appeal that the trial court erred by denying her motion to set aside the default. Instead, she contends that the trial court abused its discretion when it entered the default in an order dated November 1, 2021.[4] That order states that "the Defendants having failed to appear at the Special Scheduling Conference," a default was entered against seven defendants, including Lori Spratt. As the register of actions notes, a special scheduling conference took place on October 4, 2021, but the record contains no transcript from any conference occurring on or near that date. In addition, oral arguments took place on February 18, 2022, and March 25, 2022, regarding plaintiff's motion for a default judgment, but no transcripts of those hearings have been provided to this Court. Defendant moved in the trial court to "Limit the Record on Appeal," and that motion was granted in an order entered on May 16, 2024. But in the order permitting the appeal to proceed without all of the transcripts, the trial court stated that "[t]he transcripts for the record on appeal shall be limited to the following . . . [a]ny and all hearings that took place after February 8, 2021." Because defendant has not furnished a transcript of the scheduling conference that occurred on October 4, 2021, defendant has violated the trial court's order. If defendant could not obtain a transcript of the October 4, 2021 scheduling conference, defendant should have taken the steps prescribed by MCR 7.210(B)(2). It is not this Court's responsibility to procure transcripts of lower-court proceedings. That responsibility is assigned exclusively to the appellant. See MCR 7.210(B)(1)(a) ("The appellant is responsible for securing the filing of the transcript as provided in this rule."). Here, defendant's failure to provide a transcript of the scheduling conference that

---

[4] For some reason that this Court cannot even imagine, the clerk entered a default against "LORI SPRATT" on December 17, 2021, based on her "failure to plead or otherwise defend" the action. That clerk's entry of default, filed years after the case began, need not be considered on this appeal. Instead, we shall focus exclusively on the default entered by the trial court as a sanction for missing a conference.

took place on October 4, 2021, or to follow the procedure for addressing an unavailable transcript renders us unable to grant any relief from the trial court's entry of a default against defendant.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Sima G. Patel
/s/ Christopher P. Yates